# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 20-225V
### Filed: January 23, 2024

| | |
|---|---|
| KIM WARNER, as Mother and Natural Guardian of D.W., a minor,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>               Respondent. | Special Master Horner |

*Braden Andrew Blumenstiel*, The Law Office of DuPont & Blumenstiel, Dublin, OH, for petitioner.
*Zoe Wade*, U.S. Department of Justice, Washington, DC, for respondent.

### **DECISION ON ATTORNEYS' FEES AND COSTS[1]**

On February 27, 2020, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2018), alleging that a wide variety of symptoms arose following her minor child's February 27, 2017 diphtheria, tetanus, and acellular pertussis ("DTaP") and hepatitis A vaccinations.  (ECF No. 1.)  The petitioner indicates that the alleged symptoms were eventually diagnosed as an autism spectrum disorder ("ASD"), as well as gastrointestinal and sensory processing disorders.  (*Id*. at 3.)  An order concluding proceedings was ultimately issued on November 29, 2022, after petitioner filed a notice of voluntary dismissal.  (ECF Nos. 29-30.)  Subsequently, petitioner moved for an award of attorneys' fees and costs totaling $11,880.56.  (ECF No. 32.)  However, respondent opposes the motion, contending there was not a reasonable basis for the filing of the petition.  (ECF No. 34.)  For the reasons discussed

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

below, petitioner's motion is **DENIED** and there will be no award for attorneys' fees and costs in this case.

## I.     Procedural History

Petitioner ultimately filed a Statement of Completion on May 6, 2022, which indicates that she has filed all records required by 42 U.S.C. 300aa-11(c).  (ECF No. 24.)  On May 9, 2022, this case was assigned to my docket.  (ECF No. 26.)  On August 17, 2022, I issued an order to show cause why the case should not be dismissed.  (ECF No. 27.)

I explained that "[t]he question of vaccine-caused ASD has been extensively litigated both in the original Omnibus Autism Proceeding ('OAP') test cases as well as in numerous subsequent individual cases pursuing separate theories of causation.  These cases have invariably been dismissed for failing to preponderantly establish a prima facie showing of causation."  (ECF No. 27, pp. 2-3 (footnotes omitted).)  I further noted that D.W.'s gastrointestinal and sensory processing disorders may likely be comorbidities of his ASD.  (*Id.* at 4.)  Additionally, after a review of the medical records, I cautioned that "I do not see any instance in which any treating physician offered any medical opinion consistent with petitioner's claim."  (*Id.*)  I indicated that "[u]nless petitioner substantiates a potentially vaccine-caused injury apart from the alleged ASD it is highly unlikely that this case will have had a reasonable basis at the time of filing."  (*Id.*)  I permitted petitioner 90 days to determine if she could present a sound and reliable medical opinion supporting a vaccine injury. (*Id.*)  Thereafter, petitioner filed a notice of voluntary dismissal and an order concluding proceedings was issued.  (ECF Nos. 29-30.)

Petitioner subsequently filed the instant motion for attorneys' fees and costs on May 30, 2023.  (ECF No. 32.)  Respondent filed his opposition on June 16, 2023.  (ECF No. 34.)  Petitioner filed a reply on June 23, 2023.  (ECF No. 35.)  Accordingly, petitioner's motion is now ripe for resolution.

## II.    Party Contentions

Acknowledging the concerns raised in the order to show cause, petitioner indicates she is not seeking any fees or costs post-dating the issuance of the undersigned's order to show cause. (ECF No. 32, p. 9.)  However, petitioner nonetheless contends the case had a reasonable basis throughout the pendency of the claim.  (*Id.* at 7-8.)  Stressing the needs of petitioners to have access to counsel, petitioner argues that the standard for finding reasonable basis is "extraordinarily generous" and that policy considerations "militate in favor of a lenient approach to reasonable basis."  (*Id.* at 3.)  Petitioner stresses that analysis of reasonable basis should look to the factual basis for the claim, medical support, jurisdictional issues, and overall circumstances of the case, rather than seeking to assess the likelihood of success.  (*Id.* at 4.)  Petitioner argues that an express medical opinion supporting causation is not a requirement for a finding that reasonable basis exists.  (*Id.* at 4-5.)

Regarding the specifics of this case, petitioner contends that the following points favor a finding that this case had a reasonable basis at the time of filing: (1) D.W. experienced several symptoms post vaccination, including difficulties with coordination, behavior problems, loss of bowel control, lethargy, memory difficulties, and increased confusion; (2) D.W. did not suffer any of these symptoms prior to vaccination on February 27, 2017; (3) petitioner's sworn statement asserts that two treating physicians, Drs. Ahrendsen and Johansen, informed her in November of 2018 that D.W.'s vaccinations were the likely cause of D.W.'s behavioral issues (citing Ex. 2); (4) a medical encounter record of May 3, 2018, from a third physician, Dr. Carnazzo, confirms D.W. was seen "due to symptoms believed to be caused from a reaction to vaccinations" (citing Ex. 5, p. 3). (ECF No. 32, pp. 7-8; *see also* ECF No. 35, pp. 6-7.) And, (5), petitioner also argues that D.W. suffered symptoms consistent with the potential side effects listed on the package inserts of the subject vaccinations. (ECF No. 35, p. 6.)

Respondent, by contrast, argues that "[t]he contemporaneous medical records do not provide any objective evidence to support an inference that any of D.W.'s conditions or diagnoses were caused by the DTaP and Hepatitis A vaccines administered on February 27, 2017, as alleged." (ECF No. 34, p. 6.) Respondent stresses that claims of vaccine-caused ASD "have universally been rejected," and petitioner has not alleged any facts, or identified any evidence, that would suggest any different result. (*Id*.) When offered the opportunity to present a sound and reliable medical opinion and/or a brief arguing her case, petitioner instead voluntarily dismissed the case. (*Id*.) Respondent argues that none of the factors that can support a reasonable basis – the factual basis for the claim, the medical and scientific support for the claim, the novelty of the vaccine, or the novelty of the theory of causation – weigh in favor of petitioner's request for attorneys' fees and costs in this case. (*Id*. at 7 (citing *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018)).) Respondent contends that "this case does not entail a close call." (*Id*.)

### III.     Legal Standard

Petitioners who are denied compensation for their claims brought under the Vaccine Act may still be awarded attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, 569 U.S. 369 (2013). But even when a claim was brought in good faith and has a reasonable basis, a special master may still deny attorneys' fees. *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362-63. "Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017). Good faith is a subjective inquiry while reasonable basis is an objective inquiry that does not factor subjective views into consideration. *See James-Cornelius ex rel. E.J. v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021). In this case, petitioner's good

faith is not challenged, leaving only the question of whether there was a reasonable basis for the filing of the petition.

Determining whether there was a reasonable basis for the filing of a petition involves examining the *prima facie* petition requirements of section 300aa-11(c)(1) of the Vaccine Act, with most cases focusing on the necessary causation element of the petition.  *Cottingham ex rel. K.C. v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1345-46 (Fed. Cir. 2020).  The evidentiary standard for establishing a reasonable basis as a prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act.  *Id.* at 1346.  To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success.  *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-7 (Fed. Cl. Spec. Mstr. Aug. 23, 2012).  Instead, the special master considers the totality of the circumstances and evaluates whether objective evidence, while amounting to less than a preponderance of evidence, constitutes "more than a mere scintilla" of evidence of causation.  *Cottingham*, 971 F.3d at 1344, 1346; *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 287 (2018).

Determining what constitutes "more than a mere scintilla" of evidence has been acknowledged to be a "daunting task."  *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021).  The required showing has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation."  *Id*. (quoting *Penley v. McDowell Cnty. Bd. Educ.*, 876 F.3d 646, 655 (4th Cir. 2017)).  "More than a mere scintilla" of objective evidence supporting causation can derive from medical records that provide "only circumstantial evidence of causation." *James-Cornelius*, 984 F.3d at 1379-80 (quoting *Cottingham,* 971 F.3d at 1346).  For example, the Federal Circuit in *James-Cornelius* found significance in (1) petitioner's medical records containing a doctor's note questioning whether a vaccine adverse event should be reported, (2) the medical course suggesting a challenge-rechallenge event of petitioner's symptoms becoming worse after additional injections of the vaccine, (3) medical articles hypothesizing that the vaccine can cause the symptoms at issue, and (4) petitioner having suffered some of the same symptoms that were listed in the vaccine's package insert as potential adverse reactions of the vaccine.[2]  *Id.*; *see also Cottingham*, 971 F.3d at 1346 (finding that petitioner's medical records showed, at minimum, circumstantial evidence of causation where petitioner's medical records showed that petitioner received the Gardasil vaccine and subsequently experienced symptoms that were identified in the Gardasil package insert as potential adverse reactions of the vaccine).

---

[2] Nothing in *James-Cornelius* suggests the full extent of what may constitute circumstantial evidence, but the four examples of circumstantial evidence in *James-Cornelius* provide some guidance regarding the types of circumstantial evidence that may be considered in determining whether a reasonable basis was established.  Conversely, the Federal Circuit also stressed in *James-Cornelius* that an award of attorneys' fees and costs is within the special master's discretion and remanded the case for further proceedings.  *See* 984 F.3d at 1381.  Accordingly, it is also not the case that the presence of these specific elements of circumstantial evidence necessarily compel a finding that reasonable basis exists.

The Federal Circuit has confirmed that a case can lose its reasonable basis as it proceeds. *Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994). Counsel has a duty to avoid frivolous litigation and should use "reasoned judgment in determining whether to . . . pursue a claim." *Murphy v. Sec'y of Health & Human Servs.,* 30 Fed. Cl. 60, 62 (1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995). "[T]he [Vaccine] Program's interest in promoting attorney representation in vaccine cases, as contemplated by the attorneys' fees provisions of the statute, must be balanced carefully against the court's examination of the reasonableness of the basis for bringing the vaccine petition." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *11 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Although counsel has an "ethical obligation to be a zealous advocate," that does not give counsel a "blank check to incur expenses without regard to the merits of [the] claim." *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34-35 (1992).

IV.     Discussion

As explained above, petitioner raises five points that she argues support a reasonable basis for filing this particular petition based on the facts presented. None is persuasive, either alone or in combination. Because I therefore conclude that there was not a reasonable basis for the initial filing of this petition, petitioner's intimation that reasonable basis dissipated at the time of my issuance of the August 17, 2022 Order to Show Cause is immaterial. Moreover, given the absence of meaningful evidentiary support for petitioner's vaccine injury allegation, petitioner's resort to overarching policy considerations does not bolster her claim to having had a reasonable basis for filing this petition. As explained above, the program's interest in fostering representation does not override counsel's duty to exercise reasoned judgement in pursuing a claim.

Petitioner's first two points taken together in effect assert that there is a temporal association between D.W.'s vaccinations and onset of his symptoms that is suspicious for vaccine causation. (ECF No. 35, p. 6-7.) Even though a petitioner can meet the reasonable basis standard by pointing to circumstantial evidence in the medical records, a temporal relationship between the vaccine and the alleged symptoms by itself is not sufficient to establish a reasonable basis. *Compare Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 110, 114-15 (Fed. Cl. 2018) (finding no reasonable basis for an award for attorneys' fees and costs where petitioner only showed a temporal proximity between her third injection of the HPV vaccine and the onset of her symptoms, i.e., hives and skin irritation, without submitting an expert report providing evidence that the HPV vaccine was the cause of her injuries), *with A.S. by Svagdis v. Sec'y of Health & Human Servs.*, No. 15-520V, 2020 WL 3969874, at *2-3 (Fed. Cl. Spec. Mstr. June 4, 2020) (finding a reasonable basis for an award for attorneys' fees and costs where petitioners showed more than a temporal proximity between their daughter's vaccines and her symptoms by submitting four expert reports of physicians offering medical opinions and medical literature in support of potential causation).

Petitioner also asserts in her affidavit that two of D.W.'s treating physicians, Drs. Ahrendsen and Johansen, relayed to her that D.W.'s "behavioral problems and

disorders" were vaccine-caused.  (Ex. 2, p. 3.)  Petitioner's affidavit cannot be summarily rejected as falling outside the scope of the reasonable basis analysis.  *James-Cornelius*, 984 F.3d at 1380.  However, "medical records may indeed serve as important corroborating evidence for evaluating testimony's credibility."  *Id*.  Based on the record as a whole, I do not find petitioner's affidavit sufficiently credible on this point.  Despite including complete records relating to an extended treatment history, there is no indication in any of Dr. Ahrendsen's and Dr. Johansen's medical record notations to suggest that they attributed any of D.W.'s symptoms to his vaccination.  (Ex. 6.)  Moreover, petitioner's hearsay description of Drs. Ahrendsen's and Johansen's purported opinions on causation does not specify which of D.W.'s behaviors and/or disorders the doctors may have been referencing.  (Ex. 2, p. 3.)  Even without reaching the question of petitioner's veracity, there is too little information provided to discern whether petitioner's perception of her conversation with these doctors was reasonably accurate, especially given that the account finds absolutely no support in the contemporaneous medical records.

Petitioner further stresses that petitioner presented D.W. for care on May 3, 2018 and "concern over a possible vaccine reaction was specifically mentioned."  (ECF No. 35, p. 6 (citing Ex. 5, p. 3).)  Petitioner states that D.W. "was seen due to symptoms believed to be caused from a reaction to vaccinations."  (ECF No. 32, p. 7 (citing Ex. 5, p. 3).)  It must be stressed, however, that the "concern" and "belief" petitioner references were hers alone.  In receiving this history of a possible vaccine reaction from petitioner, Dr. Carnazzo recorded that "the story is just very convoluted and difficult to sort out."  (Ex. 5, p. 3.)  Dr. Carnazzo stressed that the only problems D.W. presented with at that time were diarrhea and abdominal pain and recommended that D.W. continue with a full vaccination schedule.  (*Id*. at 3-4.)

Petitioner's affidavit account and the history provided during D.W.'s May 3, 2018 encounter with Dr. Carnazzo speak much more to petitioner's subjective good faith in pursuing this claim than to any objective evidence of causation that would support a reasonable basis for filing the petition.  *James-Cornelius,* 984 F.3d at 1380 (accepting witness testimony as objective evidence as to the existence of symptoms but distinguishing between "lay opinions as to causation" and "facts within the witness's personal knowledge" for purposes of assessing reasonable basis.)  Even if the May 3, 2018 encounter record provides some corroboration of the factual history petitioner alleges, temporality of onset alone does not confer an objective reasonable basis, as previously explained.  *See Bekiaris,* 140 Fed. Cl. at 110, 114-15.  Dr. Carnazzo's medical record contains no medical opinion that would even partially support petitioner's claim as to vaccine causation of the reported symptoms.  In fact, if anything, Dr. Carnazzo appears to have been skeptical of petitioner's assertions.

Nonetheless, petitioner argues that an express medical opinion is not necessary and that D.W.'s symptoms align with symptoms noted in the package inserts of the subject vaccinations.  (ECF No. 35, p. 6.)  There are two critical issues that prevent petitioner from relying on vaccine package inserts in any meaningful way.  First, petitioner has not placed the package inserts into evidence in this case.  *Goodgame v.*

*Sec'y of Health & Human Servs.*, 157 Fed. Cl. 62, 72-74 (2021) (finding on review that evidence not in the record during the merits phase is unavailing). Second, while the Federal Circuit in *Cottingham* did observe that a vaccine package insert can potentially serve as some evidence supporting vaccine causation (*see* 971 F.3d at 1346), nothing in that decision suggests that the package insert should be viewed in isolation. Rather, petitioner agrees that the package insert must be considered in connection with the medical records as part of the totality of the circumstances. (ECF No. 35, p. 5.) In that regard, whereas most of the symptoms petitioner cites as purportedly reflected in the package inserts are nonspecific (*e.g.* irritability, loss of appetite, malaise, fatigue, diarrhea) (ECF No. 35, p. 6), my review of the complete record reveals that D.W. carries specific diagnoses from his treating physicians to explain his own similar symptoms and none of his treating physicians have offered any indication that any of those diagnosed conditions are vaccine caused.[3]

It must also be stressed, as observed in the prior order to show cause, that the question of vaccine-caused ASD has been extensively litigated both in the original OAP test cases[4] as well as in numerous subsequent individual cases pursuing separate theories of causation.[5] These cases have invariably been dismissed for failing to

---

[3] Petitioner also asserts that the Havrix package insert cites "metabolism and nutrition disorders" and "gastrointestinal disorders." (ECF No. 35 p. 6.) Again, however, petitioner has not actually filed the package insert into evidence. Nor does petitioner even explain the context in which these conditions are discussed in the package insert. Vaccine package inserts generally discuss symptoms and medical conditions in a variety of contexts, including warnings and contraindications as well as clinical trial results and post marketing experience. These differing contexts are not on equal footing with respect to having even the potential to evidence vaccine causation. Accordingly, it is impossible to evaluate the significance of this assertion on this record. In any event, what petitioner cites are categories of disorders rather than specific disorders. So, it is also impossible on this record to evaluate whether the disorders petitioner cites have any possible relationship to D.W.'s own condition(s).

[4] *See Cedillo v. Sec'y of Health & Human Servs.*, No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd*, 89 Fed. Cl. 158 (2009), *aff'd*, 617 F.3d 1328 (Fed. Cir. 2010); *Hazlehurst v. Sec'y of Health & Human Servs.*, No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd,* 88 Fed. Cl. 473 (2009), *aff'd*, 604 F.3d 1343 (Fed. Cir. 2010); *Snyder v. Sec'y of Health & Human Servs.*, No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd*, 88 Fed. Cl. 706 (2009); *Dwyer v. Sec'y of Health & Human Servs.*, No. 03-1202V, 2010 WL 892250 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *King v. Sec'y of Health & Human Servs.*, No. 03-584V, 2010 WL 892296 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *Mead v. Sec'y of Health & Human Servs.*, No. 03-215V, 2010 WL 892248 (Fed. Cl. Spec. Mstr. Mar. 12, 2010).

[5] *See*, *e.g.*, *Henderson v. Sec'y of Health & Human Servs.*, No. 09-616V, 2012 WL 5194060 (Fed. Cl. Spec. Mstr. Vowell Sept. 28, 2012) (rejecting molecular mimicry as a causal theory between autism and pneumococcal vaccination); *Franklin v. Sec'y of Health & Human Servs.*, No. 99-0855V, 2013 WL 3755954 (Fed. Cl. Spec. Mstr. Hastings May 16, 2013) (rejecting molecular mimicry as a causal theory between MMR and other vaccines and autism); *Coombs v. Sec'y of Health & Human Servs.*, No. 08-0818V, 2014 WL 1677584 (Fed. Cl. Spec. Mstr. Hastings Apr. 8, 2014) (rejecting the theory that the MMR or Varivax vaccines triggered febrile episodes that triggered petitioner's autism); *Blake v. Sec'y of Health & Human Servs.*, No. 03-31V, 2014 WL 2769979 (Fed. Cl. Spec. Mstr. Vowell May 21, 2014) (autism not caused by MMR vaccination); *Long v. Sec'y of Health & Human Servs.*, No. 08-792V, 2015 WL 1011740 (Fed. Cl. Spec. Mstr. Hastings Feb. 19, 2015) (rejecting a theory that mercury in the influenza vaccine combined with petitioner's genetic susceptibility triggered petitioner's autism); *Brook v. Sec'y of Health & Human Servs.*, No. 04-405V, 2015 WL 3799646 (Fed. Cl. Spec. Mstr. Hastings May 14, 2015) (rejecting

preponderantly establish a prima facie showing of causation.  Because the petition specifically acknowledges that the symptoms petitioner alleges to have been vaccine-caused were ultimately diagnosed as ASD, and, as respondent stressed in his motion response, petitioner has not identified any fact or evidence that would distinguish this case from these prior cases, the totality of the circumstances leads to the conclusion

molecular mimicry, polyclonal activation, bystander effect, and adjuvant effect as causal theories between autism and MMR or Varivax vaccinations); *Holt v. Sec'y of Health & Human Servs.*, No. 05-0136V, 2015 WL 4381588 (Fed. Cl. Spec. Mstr. Vowell June 24, 2015) (rejecting the theoroes that the hepatitis B vaccine caused brain inflammation or, produced oxidative stress, or aggravated petitioner's mitochondrial disorder, thereby causing petitioner's autism); *Lehner v. Sec'y of Health & Human Servs.*, No. 08-554V, 2015 WL 5443461 (Fed. Cl. Spec. Mstr. Vowell July 22, 2015) (autism not caused by influenza vaccine); *Miller v. Sec'y of Health & Human Servs.*, No. 02-235V, 2015 WL 5456093 (Fed. Cl. Spec. Mstr. Vowell Aug. 18, 2015) (rejecting the theories that petitioner's vaccines caused ASD by triggering mitochondrial dysfunction or creating oxidative stress); *Allen v. Sec'y of Health & Human Servs.*, No. 02-1237V, 2015 WL 6160215 (Fed. Cl. Spec. Mstr. Vowell Sept. 26, 2015) (rejecting the theory that petitioner was susceptible to mitochondrial metabolism dysfunction and, therefore, petitioner's MMR vaccine trigger mitochondrial autism); *R.K. v. Sec'y of Health & Human Servs.*, No. 03-0632V, 2015 WL 10936124 (Fed. Cl. Spec. Mstr. Vowell Sept. 28, 2015) (rejecting the theory that the influenza vaccine can cause mitochondrial regression, oxidative stress and inflammation, or an autoimmune reaction, thereby causing autism), *aff'd*, 125 Fed. Cl. 57 (2016); *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2015 WL 7732603 (Fed. Cl. Spec. Mstr. Hastings Nov. 3, 2015) (rejecting the theory that petitioner's vaccines caused mitochondrial dysfunction, thereby causing petitioner's autism); *Sturdivant v. Sec'y of Health & Human Servs.*, No. 07-788V, 2016 WL 552529 (Fed. Cl. Spec. Mstr. Hastings Jan. 21, 2016) (autism not caused by Hib and Prevnar vaccines); *R.V. v. Sec'y of Health & Human Servs.*, No. 08-504V, 2016 WL 3882519 (Fed. Cl. Spec. Mstr. Corcoran Feb. 19, 2016) (rejecting the theories that the flu vaccine triggered petitioner's preexisting mitochondrial disease or precipitated autoimmune encephalopathy, thereby triggering petitioner's autism) (on Court website), *aff'd*, 2016 WL 3647786 (Fed. Cl. June 2, 2016); *Murphy v. Sec'y of Health & Human Servs.*, No. 05-1063V, 2016 WL 3034047 (Fed. Cl. Spec. Mstr. Corcoran Apr. 25, 2016) (rejecting the theory that the pertussis toxin in the DTaP or MMR vaccine caused oxidative stress that then caused petitioner's encephalopathy and non-autistic developmental regression), *aff'd*, 128 Fed. Cl. 348 (2016); *Waddell v. Sec'y of Health & Human Servs.*, No. 10-316V, 2012 WL 4829291 (Fed. Cl. Spec. Mstr. Campbell-Smith Sept. 19, 2012) (autism not caused by MMR vaccination); *Fester v. Sec'y of Health & Human Servs.*, No. 10-243V, 2016 WL 1745436 (Fed. Cl. Spec. Mstr. Dorsey Apr. 7, 2016) (autism not caused by measles, mumps, rubella, and varicella (MMRV) vaccine); *Fresco v. Sec'y of Health & Human Servs.*, No. 06-469V, 2013 WL 364723 (Fed. Cl. Spec. Mstr. Vowell Jan. 7, 2013) (rejecting the theory that petitioner's vaccinations caused brain inflammation, which then caused petitioner's autism); *Fesanco v. Sec'y of Health & Human Servs.*, No. 02-1770, 2010 WL 4955721 (Fed. Cl. Spec. Mstr. Hastings Nov. 9, 2010) (autism not caused by multiple vaccines); *Miller v. Sec'y of Health & Human Servs.*, No. 06-0753V, 2012 WL 12507077 (Fed. Cl. Spec. Mstr. Hastings Sept. 25, 2012) (autism not caused by DTaP or MMR vaccines); *Pietrucha v. Sec'y of Health & Human Servs.*, No. 00-269V, 2014 WL 4538058 (Fed. Cl. Spec. Mstr. Hastings Aug. 22, 2014) (autism not caused by multiple vaccines); *Bushnell v. Sec'y of Health & Human Servs.*, No. 02-1648, 2015 WL 4099824 (Fed. Cl. Spec. Mstr. Hastings June 12, 2015) (rejecting the theory that the vaccinations petitioner received contained mercury or aluminum, which caused a mitochondrial disorder, resulting in encephalopathy, and causing petitioner's autism); *Bokmuller v. Sec'y of Health & Human Servs.*, No. 08-573V, 2015 WL 4467162 (Fed. Cl. Spec. Mstr. Hastings June 26, 2015) (autism not caused by multiple vaccines); *Canuto v. Sec'y of Health & Human Servs.*, No. 04-1128V, 2015 WL 9854939 (Fed. Cl. Spec. Mstr. Hastings Dec. 18, 2015) (autism not caused by DTP and DTaP vaccines); *Valle v. Sec'y of Health & Human Servs.*, No. 02-220V, 2016 WL 2604782 (Fed. Cl. Spec. Mstr. Hastings Apr. 13, 2016) (autism not caused by DTaP vaccine).  Judges of this court have affirmed the practice of dismissal without trial in such cases.  *E.g.*, *Fesanco v. Sec'y of Health & Human Servs.*, 99 Fed. Cl. 28 (2011) (Judge Braden affirming); *Canuto v. Sec'y of Health & Human Servs.*, No. 04-1128V, 2016 WL 2586510 (Fed. Cl. April 18, 2016) (Judge Yock affirming).

that there is nothing novel about this case that could otherwise favor a reasonable basis for the filing of the petition.

Although a child who happens to have ASD can still suffer a separate vaccine-related injury,[6] petitioner in this case has not presented any medical opinion that would even partly or circumstantially support any vaccine injury. To the extent D.W. has diagnosed gastrointestinal disorder and sensory processing disorders, these may likely be comorbidities of his ASD. *See*, *e.g.*, *Dwyer v. Sec'y of Health & Human Servs.*, No. 03-1202V, 2010 WL 892250, at *40 n.178 (Fed. Cl. Spec. Mstr. Mar. 12, 2010) (acknowledging that "[c]hildren with ASD have a high rate of gastrointestinal problems and dietary selectivity"); *Synder v. Sec'y of Health & Human Servs.*, No. 01-162V, 2009 WL 332044, at *142 (Fed. Cl. Spec. Mstr. Feb. 12, 2009) (recognizing gastrointestinal dysfunction as a comorbidity of ASD), *aff'd*, 88 Fed. Cl. 706 (2009): *Hazlehurst v. Sec'y of Health & Human Servs.*, No. 03-654V, 2009 WL 332306, at *30 (Fed. Cl. Spec. Mstr. Feb. 12, 2009) (noting that many children with ASD have gastrointestinal problems due to their behavioral restrictions). However, regardless of whether D.W.'s sensory processing and gastrointestinal disorders are related to his ASD, there is no evidence in D.W.'s medical records to suggest that either of these disorders is vaccine-caused. Thus, even setting D.W.'s ASD aside entirely, this case still lacked a reasonable basis.

In light of all of the above, I find that petitioner has not demonstrated that she had a reasonable basis to file this petition. Petitioner's motion for attorneys' fees and costs is **DENIED** and no award for attorneys' fees and costs is made. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[6] *See Wright v. Sec'y of Health & Human Servs.*, No. 12-423, 2015 WL 6665600 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). Special Master Vowell concluded that a child, later diagnosed with ASD, suffered a "Table Injury" after a vaccination. However, she stressed that she was *not* finding that the vaccinee's ASD in that case was "caused-in-fact" by the vaccination—to the contrary, she specifically found that the evidence in that case did *not* support a "causation-in-fact" claim. *Id*. at *2.